1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**BRODSKY & SMITH**
Evan J. Smith, Esquire (SBN 242352)
esmith@brodskysmith.com
Ryan P. Cardona, Esquire (SBN 302113)
rcardona@brodskysmith.com
9595 Wilshire Boulevard, Suite 900
Beverly Hills, CA 90212
Phone: (877) 534-2590
Facsimile: (310) 247-0160

*Attorneys for Plaintiff*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| WILLIAM RENFER,<br><br>Plaintiff,<br><br>vs.<br><br>MOMENTIVE GLOBAL INC., LAUREN ANTONOFF, SUSAN L. DECKER, DAVID EBERSMAN, DANA L. EVAN, RYAN FINLEY, SAGAR GUPTA, ERIKA H. JAMES, ZANDER LURIE, SHERYL SANDBERG, and BENJAMIN C. SPERO,<br><br>Defendants. | Case No.:<br><br>**Complaint For:**<br><br>(1) Violation of § 14 (a) of the Securities Exchange Act of 1934<br>(2) Violation of § 20(a) of the Securities Exchange Act of 1934<br><br>**JURY TRIAL DEMANDED** |

Plaintiff, William Renfer ("Plaintiff"), by and through his attorneys, alleges upon information and belief, except for those allegations that pertain to him, which are alleged upon personal knowledge, as follows:

**SUMMARY OF THE ACTION**

1.      Plaintiff brings this stockholder action against Momentive Global Inc. ("Momentive" or the "Company") and the Company's Board of Directors (the "Board" or the "Individual Defendants,", collectively with the Company, the "Defendants"), for violations of Sections 14(a) and 20(a) of the Securities and Exchange Act of 1934 (the "Exchange Act") as a result of Defendants' efforts to sell the Company to a consortium of entities led by Symphony

Technology Group (the "Ultimate Parent"), through merger vehicles Mercury Bidco LLC ("Parent") and Mercury Merger Sub, Inc. ("Merger Sub," and together with Ultimate Parent and Parent, "STG") as a result of an unfair process, and to enjoin an upcoming stockholder vote on a proposed all cash transaction (the "Proposed Transaction").

2.      The terms of the Proposed Transaction were memorialized in a March 14, 2023, filing with the Securities and Exchange Commission ("SEC") on Form 8-K attaching the definitive Agreement and Plan of Merger (the "Merger Agreement"). Under the terms of the Merger Agreement, each existing share of Momentive common stock will be converted into the right to receive $9.46 in cash, thus freezing out Plaintiff and all other stockholders of Momentive from continued ownership interest in the Company.

3.      Thereafter, on April 17, 2023, Momentive filed a Preliminary Proxy Statement on Form PREM14A (the "Preliminary Proxy Statement") with the SEC in support of the Proposed Transaction.

4.      The Proposed Transaction is unfair for a number of reasons.  Significantly, it appears as though the Board has entered into the Proposed Transaction to procure for itself and senior management of the Company significant and immediate benefits with no thought to Plaintiff, as well as the Company's public stockholders.  For instance, pursuant to the terms of the Merger Agreement, upon the consummation of the Proposed Transaction, Company Board Members and executive officers will be able to exchange all Company equity awards for the merger consideration.

5.      In violation of the Exchange Act, Defendants caused to be filed the materially deficient Preliminary Proxy Statement, preventing Plaintiff from making a fully informed decision on whether to vote in favor of the proposed transaction.  The Preliminary Proxy Statement is

materially deficient, deprives Plaintiff of the information necessary to make an intelligent, informed and rational decision of whether to vote in favor of the Proposed Transaction, and is thus in violation of the Exchange Act.  As detailed below, the Preliminary Proxy Statement omits and/or misrepresents material information concerning, among other things: (a) the sales process and in particular certain conflicts of interest for management; (b) the financial projections for Momentive, provided by Momentive management to the Board and the Board's financial advisor Qatalyst Partners LP ("Qatalyst") (c) the data and inputs underlying the financial valuation analyses, if any, that purport to support the fairness opinion created by Qatalyst, if any, and provide to the Company and the Board.

6.     Absent judicial intervention, the Proposed Transaction will be consummated, resulting in irreparable injury to Plaintiff.  This action seeks to enjoin the Proposed Transaction.

## PARTIES

7.     Plaintiff is a citizen of Alaska and, at all times relevant hereto, has been a Momentive stockholder.

8.     Defendant Momentive provides Software-as-a-Service solutions that help businesses turn stakeholder feedback into action in the United States and internationally. Momentive is incorporated under the laws of the State of Delaware and has its principal place of business at One Curiosity Way, San Mateo, CA 94403.  Shares of Momentive common stock are traded on the Nasdaq Stock Exchange under the symbol "MNTV".

9.     Defendant Lauren Antonoff ("Antonoff") has been a Director of the Company at all relevant times.

10.     Defendant Susan L. Decker ("Decker") has been a director of the Company at all relevant times.

11.     Defendant David Ebersman ("Ebersman") has been a director of the Company at all relevant times.  In addition Ebersman serves as the Chair of the Company Board.

12.     Defendant Dana L. Evan ("Evan") has been a director of the Company at all relevant times.

13.     Defendant Ryan Finley ("Finley") has been a director of the Company at all relevant times.

14.     Defendant Sagar Gupta ("Gupta") has been a director of the Company at all relevant times.

15.     Defendant Erika H. James ("James") has been a director of the Company at all relevant times.

16.     Defendant Zander Lurie ("Lurie") has been a director of the Company at all relevant times.  In addition Lurie serves as the Company's Chief Executive Officer ("CEO").

17.     Defendant Sheryl Sandberg ("Sandberg") has been a directory of the Company at all relevant times.

18.     Defendant Benjamin C. Spero ("Spero") has been a directory of the Company at all relevant times.

19.     Defendants identified in ¶¶ 9 - 18 are collectively referred to as the "Individual Defendants."

20.     Non-Party Ultimate Parent is a private equity partner to market leading companies in data, software, and analytics.

21.     Non-Parties Parent and Merger Sub re a wholly owned subsidiaries of Ultimate Parent created to effectuate the Proposed Transaction.

## JURISDICTION AND VENUE

22.     This Court has subject matter jurisdiction pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1331 (federal question jurisdiction) as Plaintiff alleges violations of Sections 14(a) and 20(a) of the Exchange Act.  This action is not a collusive one to confer jurisdiction on a court of the United States, which it would not otherwise have.  The Court has supplemental jurisdiction over any claims arising under state law pursuant to 28 U.S.C. § 1367.

1       23.     Personal jurisdiction exists over each defendant either because the defendant

2  conducts business in or maintains operations in this District, or is an individual who is either

3  present in this District for jurisdictional purposes or has sufficient minimum contacts with this

4  District as to render the exercise of jurisdiction over defendant by this Court permissible under

5  traditional notions of fair play and substantial justice.

6       24.     Venue is proper in this District pursuant to 28 U.S.C. § 1391, because Momentive

7  maintains its principal offices in this district, and each of the Individual Defendants, as Company

8  officers or directors, has extensive contacts within this District.

## SUBSTANTIVE ALLEGATIONS

*Company Background*

11       25.     Momentive provides Software-as-a-Service solutions that help businesses turn

12  stakeholder feedback into action in the United States and internationally.  The Company offers

13  survey software products under the SurveyMonkey brand, that enable customers to listen and take

14  action on stakeholder feedback; GetFeedback Essentials that provides companies the tools to

15  launch customer experience programs quickly by gathering feedback via email and across their

16  websites, analyzing it in one place, and integrating with their Salesforce CRM platform;

17  GetFeedback Pro, which includes the Essentials features and adds feedback collection channels,

18  advanced analytics, automation, and additional pre-built integrations; and GetFeedback Ultimate

19  that comprises the GetFeedback Pro features and adds mobile apps as a feedback collection

20  channel and enables single sign-on, as well as GetFeedback Direct and GetFeedback Digital.

21       26.     The Company also provides Audience panel, which enables organizations to collect

22  and analyze real-time actionable data from targeted panelists; Purpose-built insights solutions that

23  offers a suite of solutions, such as brand and industry tracking, usage & attitudes, and concept,

24  packaging, Ad, name, message, and logo design testing; TechValidate, a marketing content

25  automation solution; SurveyMonkey Apply, an application management solution; and Wufoo that

26  helps users create web and mobile forms, collect file uploads, and receive online payments.

27.     Momentive serves financial services, internet, technology, healthcare, media and entertainment, consumer goods and retail, transportation and logistics, government agencies, manufacturing, energy, education, professional services, and non-profit organizations.

28.     The Company's most recent financial performance press release, revealing financial results from the quarter preceding the announcement of the Proposed Transaction, indicated sustained and solid financial performance.  For example, in the February 16, 2023 press release announcing its Q4 and FY 2022 financial results, the Company highlighted such milestones as total revenues of $122.4 million, an increase of 4% compared to the same period last year. Further, sales-assisted revenue was $49.3 million, an increase of 23% year-on-year.

29.     Speaking on these positive results, CEO Defendant Lurie commented on the Company's positive financial results and prospects for future growth as follows, "Our fourth quarter results illustrate our continued execution against our top priorities: driving meaningful operating leverage and positioning the company for more profitable growth."

30.     These positive results are not an anomaly, but rather, are indicative of a trend of continued financial success and future potential success by Momentive.  Clearly, based upon these positive financial results and outlook, the Company is likely to have tremendous future success.

31.     Despite this upward trajectory and continually increasing financial results, the Individual Defendants have caused Momentive to enter into the Proposed Transaction without providing requisite information to Momentive stockholders such as Plaintiff.

*The Flawed Sales Process*

32.     As detailed in the Preliminary Proxy Statement, the process deployed by the Individual Defendants was flawed and inadequate, was conducted out of the self-interest of the Individual Defendants and was designed with only one concern in mind – to effectuate a sale of the Company by any means possible.

33.     Notably, the Preliminary Proxy Statement is silent as to the nature of the confidentiality agreement entered into between the Company and STG, whether this agreement differed from any other agreement with potentially interested third parties not specifically

1    mentioned by the Preliminary Proxy Statement, if so in all specific manners, including all specific

2    terms of any such included "don't-ask, don't-waive" provisions or standstill provisions contained

3    therein, including, all specific conditions, if any, under which such provisions would fall away.

4         34.    It is not surprising, given this background to the overall sales process, that it was

5    conducted in an inappropriate and misleading manner.

6    ***The Proposed Transaction***

7         35.    On March 13, 2023, Momentive issued a press release announcing the Proposed

8    Transaction.  The press release stated, in relevant part:

9    **SAN MATEO, Calif. —** Mar. 13, 2023 — Momentive (Nasdaq: MNTV), the
10   maker of SurveyMonkey, today announced it has entered into a definitive
     agreement to be acquired by a consortium led by Symphony Technology Group
11   (STG) in an all-cash transaction that values Momentive at approximately $1.5
     billion. Under the terms of the agreement, Momentive shareholders will receive
12   $9.46 per share, representing a premium of approximately 28% to the volume
     weighted average closing price of Momentive stock for the 10 trading days ending
13   on March 13, 2023, and a 46% premium to the company's closing stock price on
     the day prior to media rumors regarding a potential sale on October 19, 2022.
14

15   "This new chapter will enable Momentive to advance our long-term strategy and
     mission," said Zander Lurie, Momentive CEO. "STG's 20 years of investment
16   experience in software, analytics, and data companies will provide us with
     invaluable expertise as we scale our customer base and product suite. Today's
17   volatile business climate necessitates that organizations consistently collect
     feedback from their stakeholders. That's where we shine."
18

19   "The transaction is the result of an extensive and careful process to review strategic
     alternatives by the Momentive board. The board believes this is the right path for
20   delivering certain and attractive value for shareholders," said David Ebersman,
     chair of the Momentive Board of Directors. "The Momentive board voted
21   unanimously in favor of the transaction."

22   "SurveyMonkey is the most iconic brand in survey technology and has a terrific
     reputation among individuals, teams, and enterprises for innovation and leadership,
23   with an impressive combination of incredible ease of use and advanced enterprise
     capabilities and analytics," said J.T. Treadwell, Managing Director at STG. "We
24   have long admired the company during our 20-year history of active investment in
     the insights and analytics sector, and are very excited to partner with the team at
25   Momentive to build upon their excellent foundation. Together we will continue
     delivering exceptional value and innovation to individuals and enterprises
26   globally."

27

28

Approvals and Timing

The transaction, which was approved unanimously by the Momentive Board of Directors, is expected to close in the second or third quarter of 2023, subject to customary closing conditions, including approval by Momentive shareholders and the receipt of required regulatory approvals. The transaction is not subject to a financing condition.

Upon completion of the transaction, Momentive's common stock will no longer be listed on any public market. The company will continue to operate under the Momentive name and Momentive and SurveyMonkey brands.

Advisors

Qatalyst Partners is serving as financial advisor to Momentive in connection with the proposed transaction. Wilson Sonsini Goodrich & Rosati, P.C. is serving as legal counsel to Momentive.

Paul Hastings LLP is serving as legal counsel to STG. Silver Point acted as Sole Lead Arranger and provided committed debt financing in support of the acquisition.

*Potential Conflicts of Interest*

36.     The breakdown of the benefits of the deal indicate that Momentive insiders are the primary beneficiaries of the Proposed Transaction, not the Company's public stockholders such as Plaintiff.  The Board and the Company's executive officers are conflicted because they will have secured unique benefits for themselves from the Proposed Transaction not available to Plaintiff as a public stockholder of Momentive.

37.     Company insiders, currently own large, illiquid portions of Company stock all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

38.     Additionally, Company insiders, currently own large amounts of company options, restricted stock units, and other equity awards, all of which will be exchanged for the merger consideration upon the consummation of the Proposed Transaction, not shared amongst Plaintiff and other public stockholders of the Company.

COMPLAINT

39.    These amounts of stock and equity awards held by Company insiders are substantial, and will provide such insiders with large cash paydays not shared amongst Plaintiff and other public stockholders of the Company as follows.

| Name | Shares of Common Stock Held Directly[1] | | In-the-Money Vested Momentive Options[2] | | In-the-Money Unvested Momentive Options[3] | | Momentive RSUs[4] | | Momentive restricted stock[5] | | Total ($)[6] |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | Number of Shares (#) | Value of Shares ($) | Number of Shares Subject to Vested Portion (#) | Value of Shares Subject to Vested Portion ($) | Number of Shares Subject to Unvested Portion (#) | Value of Shares Subject to Unvested Portion ($) | Number of Shares (#) | Value ($) | Number of Shares (#) | Value ($) | |
| Lauren Antonoff | 3,048 | 28,834 | 3,048 | — | — | — | 33,523 | 317,128 | — | — | 345,962 |
| David Ebersman | 55,626 | 526,222 | 55,626 | — | — | — | 2,512 | 23,764 | — | — | 549,985 |
| Ryan Finley | 8,125,915 | 76,871,156 | 20,626 | — | — | — | 2,512 | 23,764 | — | — | 76,894,919 |
| Erika H. James | 28,749 | 271,966 | 28,749 | — | — | — | 2,512 | 23,764 | — | — | 295,729 |
| Sheryl Sandberg | 8,899,833 | 84,192,420 | — | — | — | — | — | — | — | — | 84,192,420 |
| Susan L. Decker | 55,626 | 526,222 | 55,626 | — | — | — | 2,512 | 23,764 | — | — | 549,985 |
| Dana L. Evan | 35,988 | 340,446 | 35,988 | — | — | — | 2,512 | 23,764 | — | — | 364,210 |
| Sagar Gupta | — | — | — | — | — | — | 17,587 | 166,373 | — | — | 166,373 |
| Alexander J. Lurie | 985,212 | 9,320,106 | 880,333 | — | — | — | 353,211 | 3,341,376 | 320,538 | 3,032,290 | 15,693,772 |
| Benjamin C. Spero | 95,434 | 902,806 | 86,937 | — | — | — | 2,512 | 23,764 | — | — | 926,569 |
| Serena Williams | — | — | — | — | — | — | — | — | — | — | — |
| Brad Smith | — | — | — | — | — | — | — | — | — | — | — |
| Justin Coulombe | — | — | — | — | — | — | — | — | — | — | — |
| Tom Hale | 13,935 | 131,825 | 13,935 | — | — | — | — | — | — | — | 131,825 |
| John Schoenstein | — | — | — | — | — | — | — | — | — | — | — |
| Lora Blum | 73,139 | 691,895 | 73,139 | — | 150,000 | 348,000 | 84,567 | 800,004 | 94,268 | 891,775 | 2,731,674 |
| Rebecca Cantieri | 101,821 | 963,227 | 101,821 | — | 150,000 | 348,000 | 75,053 | 710,001 | 80,699 | 763,412 | 2,784,641 |
| Priyanka Carr | 98,354 | 930,429 | 98,354 | — | 150,000 | 348,000 | 146,063 | 1,381,756 | 133,105 | 1,259,173 | 3,919,358 |
| Clarence Ewell | 73,138 | 691,885 | 73,138 | — | 150,000 | 348,000 | 310,958 | 2,941,663 | — | — | 3,981,548 |
| Richard Sullivan Jr. | — | — | — | — | — | — | 590,217 | 5,583,453 | — | — | 5,583,453 |

COMPLAINT

40.      In addition, certain employment agreements with certain Momentive executives, entitle such executives to severance packages should their employment be terminated under certain circumstances.  These 'golden parachute' packages are significant and will grant each director or officer entitled to them millions of dollars, compensation not shared by Plaintiff as follows:

**Golden Parachute Compensation**

| Name | Cash ($)[1] | Equity ($)[2] | Perquisites / Benefits ($)[3] | Total ($)[4] |
|---|---|---|---|---|
| Alexander J. Lurie | 915,342 | 6,373,666 | 53,383 | 7,342,391 |
| Richard Sullivan Jr. | 508,342 | 1,395,870 | 23,010 | 1,927,222 |
| Lora Blum | 462,976 | 2,039,779 | 15,167 | 2,517,923 |
| Clarence Ewell | 520,164 | 3,289,663 | 15,167 | 3,824,994 |
| Priyanka Carr | 462,237 | 2,988,929 | 6,936 | 3,458,103 |
| Justin Coulombe[5] | 0 | 0 | 0 | 0 |
| John Schoenstein[6] | 0 | 0 | 0 | 0 |

41.      The Preliminary Proxy Statement also fails to adequately disclose communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. Communications regarding post-transaction employment during the negotiation of the underlying transaction must be disclosed to stockholders. This information is necessary for Plaintiff to understand potential conflicts of interest of management and the Board, as that information provides illumination concerning motivations that would prevent fiduciaries from acting solely in the best interests of the Company's stockholders.

42.      Thus, while the Proposed Transaction is not in the best interests of Momentive, Plaintiff or Company stockholders, it will produce lucrative benefits for the Company's officers and directors.

*The Materially Misleading and/or Incomplete Preliminary Proxy Statement*

43.      On April 17, 2023, the Momentive Board caused to be filed with the SEC a materially misleading and incomplete Preliminary Proxy Statement that, in violation the Exchange

COMPLAINT

1  Act, failed to provide Plaintiff in his capacity as a Company stockholder with material information

2  and/or provides materially misleading information critical to the total mix of information available

3  to Plaintiff concerning the financial and procedural fairness of the Proposed Transaction.

4  *Omissions and/or Material Misrepresentations Concerning the Sales Process leading up*

5  *to the Proposed Transaction*

6      44.    Specifically, the Preliminary Proxy Statement fails to disclose material information

7  concerning the process conducted by the Company and the events leading up to the Proposed

8  Transaction.  In particular, the Preliminary Proxy Statement fails to disclose:

9      a.   Whether the confidentiality agreements entered into by the Company with STG

10      differed from any other unnamed confidentiality agreement entered into

11      between the Company and an interested third parties;

12      b.   All specific conditions under which any standstill provision contained in any

13      entered confidentiality agreement entered into between the Company and

14      potentially interested third parties throughout the sales process, including STG

15      and/or its affiliates, would fall away; and

16      c.   Adequate and complete disclosure of communications regarding post-

17      transaction employment during the negotiation of the underlying transaction

18      must be disclosed to stockholders.

19  *Omissions and/or Material Misrepresentations Concerning Momentive's Financial*

20  *Projections*

21      45.    The Preliminary Proxy Statement fails to provide material information concerning

22  financial projections for Momentive provided by Momentive management to the Board and

23  Qatalyst, and relied upon by Qatalyst in its analyses.  The Preliminary Proxy Statement discloses

24  management-prepared financial projections for the Company which are materially misleading.

25      46.    Notably the Preliminary Proxy Statement reveals that as part of its analyses,

26  Qatalyst reviewed, "the March 2023 long-range plan and the March 2023 extrapolations prepared

27  by Momentive management".

28

47.     Therefore, the Preliminary Proxy Statement should have, but fails to provide, certain information in the projections that Momentive management provided to the Board and Qatalyst.  Courts have uniformly stated that "projections … are probably among the most highly-prized disclosures by investors.  Investors can come up with their own estimates of discount rates or [] market multiples.  What they cannot hope to do is replicate management's inside view of the company's prospects." *In re Netsmart Techs., Inc. S'holders Litig.*, 924 A.2d 171, 201-203 (Del. Ch. 2007)

48.     With regard to the *April 2022 Long Range Plan* set of projections prepared by Momentive, the Preliminary Proxy Statement fails to disclose material line items for important metrics as follows:

     a.  Non-GAAP Operating Income, including all underlying inputs, metrics, and assumptions, including specifically: GAAP income (loss) from operations, stock-based compensation, net, amortization of acquisition intangible assets, acquisition-related transaction costs, and restructuring.

49.     With regard to the *November 2022 Long Range Plan* set of projections prepared by Momentive, the Preliminary Proxy Statement fails to disclose material line items for important metrics as follows:

     a.  Non-GAAP Operating Income, including all underlying inputs, metrics, and assumptions, including specifically: GAAP income (loss) from operations, stock-based compensation, net, amortization of acquisition intangible assets, acquisition-related transaction costs, and restructuring.

50.     With regard to the *March 2023 Long Range Plan and March 2023 Extrapolations* set of projections prepared by Momentive, the Preliminary Proxy Statement fails to disclose material line items for important metrics as follows:

     a.  Non-GAAP Operating Income, including all underlying inputs, metrics, and assumptions, including specifically: GAAP income (loss) from operations,

COMPLAINT

1    stock-based compensation, net, amortization of acquisition intangible assets,

2    acquisition-related transaction costs, and restructuring; and

3         b.    Unlevered Free Cash Flow, including all underlying inputs, metrics, and

4    assumptions, including specifically: the impact of cash taxes, depreciation and

5    amortization, capital expenditures, changes in net working capital and

6    amortization of deferred costs.

7        51.    The Preliminary Proxy Statement also fails to disclose a reconciliation of all non-

8    GAAP to GAAP metrics utilized in the projections.

9        52.    This information is necessary to provide Plaintiff, in their capacity as a Company

10   stockholder, a complete and accurate picture of the sales process and its fairness.  Without this

11   information, Plaintiff is not fully informed as to Defendants' actions, including those that may

12   have been taken in bad faith, and cannot fairly assess the process.

13       53.    Without accurate projection data presented in the Preliminary Proxy Statement,

14   Plaintiff is unable to properly evaluate the Company's true worth, the accuracy of Qatalyst's

15   financial analyses, or make an informed decision whether to vote in favor of the Proposed

16   Transaction.  As such, the Board has violated the Exchange Act by failing to include such

17   information in the Preliminary Proxy Statement.

18       *Omissions and/or Material Misrepresentations Concerning the Financial Analyses by*

19       *Qatalyst*

20       54.    In the Preliminary Proxy Statement, Qatalyst describes its fairness opinion and the

21   various valuation analyses performed to render such opinion.  However, the descriptions fail to

22   include necessary underlying data, support for conclusions, or the existence of, or basis for,

23   underlying assumptions.  Without this information, one cannot replicate the analyses, confirm the

24   valuations or evaluate the fairness opinions.

25

26

27

28

COMPLAINT

55.    With respect to the *Discounted Cash Flow Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The specific inputs, metrics, and assumptions used to determine range of discount rates from 12.0% to 14.5%;

      b.  The Company's estimated weighted average cost of capital utilized, and the specific inputs and assumptions used to determine it;

      c.  The terminal value of the Company calculated;

      d.  The specific inputs, metrics, and assumptions used to determine the utilized range of fully diluted enterprise value to next-12-months' estimated UFCF multiples of 10.0x to 15.0x;

      e.  The Company's cash and cash equivalents as of December 31, 2022;

      f.  The implied net present value of Momentive's estimated federal tax savings due to its remaining research and development tax credits for calendar year 2032;

      g.  The principal amount of Momentive's outstanding debt as of December 31, 2022, as provided by Momentive management; and

      h.  The number of fully diluted shares of Momentive common stock outstanding as of March 10, 2023.

56.    With respect to the *Selected Companies Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The specific inputs and assumptions used to determine the utilized CY2023E Revenue multiple reference range of 2.0x to 3.5x; and

      b.  The specific inputs and assumptions used to determine the utilized CY2023E LFCF multiple reference range of 10.5x to 15.0x.

57.    With respect to the *Selected Transactions Multiples Analysis*, the Preliminary Proxy Statement fails to disclose the following:

      a.  The specific date on which each transaction closed;

      b.  The value of each transaction compared;

  c. The specific inputs and assumptions used to determine the utilized LTM Revenue multiple reference ranges 2.6x to 6.3x;

  d. The specific inputs and assumptions used to determine the utilized NTM Revenue multiple reference ranges 2.3x to 5.9x; and

  e. The specific inputs and assumptions used to determine the utilized NTM LFCF multiple reference ranges 13.1x to 27.5x.

58. These disclosures are critical for Plaintiff to be able to make an informed decision on whether to vote in favor of the Proposed Transaction.

59. Without the omitted information identified above, Plaintiff is missing critical information necessary to evaluate whether the proposed consideration truly maximizes his value and serves his interest as a stockholder. Moreover, without the key financial information and related disclosures, Plaintiff cannot gauge the reliability of the fairness opinion and the Board's determination that the Proposed Transaction is in his best interests as a public Momentive stockholder. As such, the Board has violated the Exchange Act by failing to include such information in the Preliminary Proxy Statement

**FIRST COUNT**

**Violations of Section 14(a) of the Exchange Act**

**(Against All Defendants)**

60. Plaintiff repeats all previous allegations as if set forth in full herein.

61. Defendants have disseminated the Preliminary Proxy Statement with the intention of soliciting stockholders, including Plaintiff, to vote in favor of the Proposed Transaction.

62. Section 14(a) of the Exchange Act requires full and fair disclosure in connection with the Proposed Transaction. Specifically, Section 14(a) provides that:

It shall be unlawful for any person, by the use of the mails or by any means or instrumentality of interstate commerce or of any facility of a national securities exchange or otherwise, in contravention of such rules and regulations as the [SEC] may prescribe as necessary or appropriate in the public interest or for the protection

of investors, to solicit or to permit the use of his name to solicit any proxy or consent or authorization in respect of any security (other than an exempted security) registered pursuant to section 78*l* of this title.

63.     As such, SEC Rule 14a-9, 17 C.F.R. 240.14a-9, states the following:

No solicitation subject to this regulation shall be made by means of any proxy statement, form of proxy, notice of meeting or other communication, written or oral, containing any statement which, at the time and in the light of the circumstances under which it is made, is false or misleading with respect to any material fact, or which omits to state any material fact necessary in order to make the statements therein not false or misleading or necessary to correct any statement in any earlier communication with respect to the solicitation of a proxy for the same meeting or subject matter which has become false or misleading.

64.     The Preliminary Proxy Statement was prepared in violation of Section 14(a) because it is materially misleading in numerous respects and omits material facts, including those set forth above.  Moreover, in the exercise of reasonable care, Defendants knew or should have known that the Preliminary Proxy Statement is materially misleading and omits material facts that are necessary to render them non-misleading.

65.     The Individual Defendants had actual knowledge or should have known of the misrepresentations and omissions of material facts set forth herein.

66.     The Individual Defendants were at least negligent in filing a Preliminary Proxy Statement that was materially misleading and/or omitted material facts necessary to make the Preliminary Proxy Statement not misleading.

67.     The misrepresentations and omissions in the Preliminary Proxy Statement are material to Plaintiff, and Plaintiff will be deprived of his entitlement to decide whether to vote his shares in favor of the Proposed Transaction on the basis of complete information if such misrepresentations and omissions are not corrected prior to the stockholder vote regarding the Proposed Transaction.

**SECOND COUNT**

**Violations of Section 20(a) of the Exchange Act**

**(Against all Individual Defendants)**

68.     Plaintiff repeats all previous allegations as if set forth in full herein.

69.     The Individual Defendants were privy to non-public information concerning the Company and its business and operations via access to internal corporate documents, conversations and connections with other corporate officers and employees, attendance at management and Board meetings and committees thereof and via reports and other information provided to them in connection therewith.  Because of their possession of such information, the Individual Defendants knew or should have known that the Preliminary Proxy Statement was materially misleading to Plaintiff in his capacity as a Company stockholder.

70.     The Individual Defendants were involved in drafting, producing, reviewing and/or disseminating the materially false and misleading statements complained of herein.  The Individual Defendants were aware or should have been aware that materially false and misleading statements were being issued by the Company in the Preliminary Proxy Statement and nevertheless approved, ratified and/or failed to correct those statements, in violation of federal securities laws.  The Individual Defendants were able to, and did, control the contents of the Preliminary Proxy Statement.  The Individual Defendants were provided with copies of, reviewed and approved, and/or signed the Preliminary Proxy Statement before its issuance and had the ability or opportunity to prevent its issuance or to cause it to be corrected.

71.     The Individual Defendants also were able to, and did, directly or indirectly, control the conduct of Momentive's business, the information contained in its filings with the SEC, and its public statements.  Because of their positions and access to material non-public information available to them but not the public, the Individual Defendants knew or should have known that the misrepresentations specified herein had not been properly disclosed to and were being concealed from Plaintiff and Company, and that the Preliminary Proxy Statement was misleading.

1  As a result, the Individual Defendants are responsible for the accuracy of the Preliminary Proxy

2  Statement and are therefore responsible and liable for the misrepresentations contained herein.

3         72.     The Individual Defendants acted as controlling persons of Momentive within the

4  meaning of Section 20(a) of the Exchange Act.  By reason of their position with the Company, the

5  Individual Defendants had the power and authority to cause Momentive to engage in the wrongful

6  conduct complained of herein.  The Individual Defendants controlled Momentive and all of its

7  employees.  As alleged above, Momentive is a primary violator of Section 14 of the Exchange Act

8  and SEC Rule 14a-9.  By reason of their conduct, the Individual Defendants are liable pursuant to

9  section 20(a) of the Exchange Act.

10        WHEREFORE, Plaintiff demands injunctive relief, in his favor and against the Defendants,

11  as follows:

12       A.     Enjoining the Proposed Transaction;

13       B.     In the event Defendants consummate the Proposed Transaction, rescinding it and

14  setting it aside or awarding rescissory damages to Plaintiff;

15       C.     Directing the Individual Defendants to exercise their fiduciary duties to disseminate

16  a Preliminary Proxy Statement that does not contain any untrue statements of material fact

17  and that states all material facts required in it or necessary to make the statements contained

18  therein not misleading;

19  

20       D.     Awarding Plaintiff the costs of this action, including reasonable allowance for

21  Plaintiff's attorneys' and experts' fees; and

22       E.     Granting such other and further relief as this Court may deem just and proper.

23

24

25

26

27

28

COMPLAINT

1

**<u>DEMAND FOR JURY TRIAL</u>**

2

Plaintiff hereby demands a jury on all issues which can be heard by a jury.

3

4

Dated: April 21, 2023                     **BRODSKY & SMITH**

5

By: *Evan J. Smith*

Evan J. Smith, Esquire (SBN 242352)

6

esmith@brodskysmith.com

Ryan P. Cardona, Esquire (SBN 302113)

7

rcardona@brodskysmith.com

9595 Wilshire Blvd., Ste. 900

8

Phone: (877) 534-2590

Facsimile (310) 247-0160

9

10

*Attorneys for Plaintiff*

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

COMPLAINT